UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| MICHAEL WILLIAMS | * | CIVIL ACTION NO. 17-353 |
| --- | --- | --- |
| | * | |
| | * | SECTION: "G"(1) |
| VERSUS | * | |
| | * | JUDGE |
| | * | NANNETTE JOLIVETTE BROWN |
| TRINITY MEDICAL MANAGEMENT, L.L.C. | * | |
| | * | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the Motion to Quash Depositions filed by Hyperion Safety Services, L.L.C. and Trinity Medical Management, L.L.C. (collectively "Hyperion") on February 14, 2018. (Rec. Doc. 33). The Court expedited the Motion and plaintiff Michael Williams filed a memorandum in opposition on February 16, 2018. The Court held a telephone conference regarding the Motion on February 20, 2018, at which time the Court granted the motion in part, quashing the deposition of Mike Helm.[1] This Order and Reasons concerns the remaining issue: the depositions of Hyperion's former counsel Kathleen Rice and Danica Denny. Rice and Denny also filed a Motion to Quash (Rec. Doc. 35) raising the same concerns as Hyperion and adding their argument that they were improperly served because the subpoenas were served on administrative

---

[1] The Court found that La. Rev. Stat. § 9:4112 prohibits the deposition of the mediator. That statute protects from disclosure the communications and records made during mediation. As to a mediator, it provides that: "The mediator is not subject to subpoena and cannot be required to make disclosure through discovery or testimony at trial except in a judicial or administrative procedure with respect to Subparagraph B(1)(a) of this Section." La. Rev. Stat. § 9:4112(B)(2). The court found inapplicable the sole exception applicable to mediators, which concerns "Reports made by the mediator to a court, pursuant to that court's order, only as to whether the parties appeared as ordered, whether the mediation took place, and whether a settlement resulted therein." Id. § 9:4112(B)(1)(a). The Court notes that Hyperion did not raise La. Rev. Stat. §9:4112 as a basis for quashing the depositions of Rice and Denny. This may be because the statute includes an exception (inapplicable to mediators) for disclosure with respect to "A judicial determination of the meaning or enforceability of an agreement resulting from a mediation procedure if the court determines that testimony concerning what occurred in the mediation proceeding is necessary to prevent fraud or manifest injustice." Id. La. Rev. Stat. § 9:4112(B)(1)(c).

1

staff and not on them personally and the subpoenas did not provide a reasonable time for compliance.

For the following reasons, Hyperion's Motion to Quash (Rec. Doc. 33) is DENIED; and the Motion to Quash filed by Rice and Denny (Rec. Doc. 35) is DENIED.

Background

Williams filed a Jones Act claim against Hyperion on January 5, 2015, for injuries he allegedly sustained working as a safety representative for Hyperion when he slipped and fell on some ice on January 5, 2014 (the "Original Hyperion Litigation"). Hyperion says Williams' seaman status was hotly contested in the Original Hyperion Litigation. That case went to mediation on January 11, 2016, at which time the parties agreed to a settlement. The written Receipt, Release and Indemnification Agreement ("Settlement Agreement") was dated February 6, 2016, and included a provision pursuant to which Williams agreed to "defend, indemnify and hold harmless [the Defendants] from and against any and all claims arising out of the incident, including, but not limited to any contribution or tort indemnity claims by U.S. Well Services, L.L.C, and Inflection Energy, L.L.C." The Settlement Agreement also provided that "[i]t is specifically understood and agreed that Michael Williams reserves all rights he may have against Inflection Energy LLC and U.S. Well Services, LLC."

On the same day he filed the Original Hyperion Litigation, Williams also filed a lawsuit against U.S. Well Services, L.L.C. ("U.S. Well") and Inflection Energy, L.L.C., arising out of the same January 5, 2014, incident (the "Pennsylvania Litigation"). That suit was transferred to the United States District Court for the Middle District of Pennsylvania. On September 22, 2015, U.S. Well filed a third-party complaint against Hyperion seeking contribution and indemnification from Hyperion based on a Master Service Agreement between them. The Pennsylvania Litigation was

2

pending at the time the Settlement Agreement was entered into, and it remains pending today. Hyperion says that in agreeing to the defense indemnity clause in the Settlement Agreement, Plaintiff agreed to indemnify Hyperion against the contractual claims of U.S. Well. Plaintiff filed the present lawsuit for a declaratory judgment that he is not obligated by the Settlement Agreement to defend and indemnify Hyperion with respect to the Pennsylvania Litigation. Hyperion has asserted a counterclaim seeking a judgment that Williams is obligated to defend and indemnify them against the Pennsylvania Litigation.

In his Complaint, Williams urges that the defense and indemnity provision (1) irreconcilably conflicts with another provision of the Settlement Agreement providing that the parties specifically understand that Williams was reserving his rights against Inflection Energy LLC and U.S. Well Services LLC, (2) is equivocal because it does not mention contractual indemnity and tort indemnity is nonexistent, (3) violates public policy because it would create a conflict of interest if Williams' counsel "might have to defend one client at another's—an adversary's—expense," and (4) is unconscionable because Williams is a Jones Act seaman and ward of admiralty who did not have an informed understanding of Hyperion's interpretation of the Settlement Agreement. In opposition to Hyperion's pending motion for summary judgment, Williams further argues that his understanding of the Settlement Agreement was not that he was undertaking a defense and indemnity obligation for costs related to his own personal injury lawsuit. He adds that he was not properly compensated for undertaking such an obligation. Although a "Certificate of Attorney" was signed by Williams' attorney on February 10, 2016, providing that the attorney had "fully explained to Mr. Williams all of his rights against the parties released under the applicable law . . . including the indemnity obligations" and that "Williams confirmed to [the

3

attorney] that he fully understood all of his rights and the significance of the release he is to execute," Williams testified at his deposition that the release was never explained to him.

Hyperion has deposed Williams regarding his recollections of the mediation and entering into the Settlement Agreement. Hyperion has also deposed the attorney that represented Williams during the Original Hyperion Litigation regarding the mediation and Settlement Agreement. Williams now seeks to depose Hyperion's counsel at the time of the mediation. He seeks the discovery of "representations of Hyperion during the settlement process" and argues that what transpired during the mediation and what Hyperion said about settlement will become relevant at the trial that will ensue if the court cannot interpret the Settlement Agreement as a matter of law. (Rec. Doc. 37, at 2-3). Hyperion has moved to quash the depositions of its former attorneys Rice and Danica, arguing their testimony is irrelevant. As noted, Rice and Denny also filed a Motion to Quash raising the same concerns as Hyperion and adding their argument that they were improperly served because the subpoenas were served on administrative staff and not on them personally and the subpoenas did not provide a reasonable time for compliance.

<u>Law and Analysis</u>

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). Of note, with the 2015 amendment to Rule 26, it is now clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." <u>Id.</u> In assessing proportionality of discovery, the following should be considered: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

4

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. The advisory committee comments to the 2015 amendment to Rule 26 make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information sought is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Id. advisory committee comments to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id.

2. *Deposition of Counsel*

Hyperon cites an Eighth Circuit case for the proposition that a deposition of opposing counsel can only proceed if (1) there is no other means to obtain the information, (2) the information is relevant and non-privileged, and (3) the information is crucial to preparation of the case. Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). The Shelton case concerned a deposition of the opposing party's current, in-house counsel who was involved in defending the claim. Id. The Eighth Circuit was concerned that deposition of opposing counsel can "disrupt the adversarial system and lower[] the standards of the profession," that it might "add[] to the already burdensome time and costs of litigation" in order to deal with work product an attorney client privilege issues, and that it would "detract[] from the quality of client representation" because an attorney should not have to fear interrogation by his or her opponent. Id.

5

Shelton has been applied in this circuit and, as Hyperion's current counsel pointed out during the telephone conference, it has been applied in a case quashing the deposition of former opposing counsel. See Nguyen v. Excel Corp., 197 F.3d 200, 208–09 (5th Cir. 1999); Walk Haydel & Assocs., Inc. v. Coastal Power & Prod. Co., No. CV 05-1618, 2008 WL 11351583, at *6 (E.D. La. Dec. 29, 2008). The Coastal Power case involved the proposed deposition by one party of its opponent's former counsel, where the court found the Shelton rule was applicable. 2008 WL 11351583, at *1. The court did not allow the deposition of former counsel because it found that former counsel did not possess relevant, nonprivileged information. 2008 WL 11351583, at *6. Of course this is the threshold for all discovery, not just discovery from counsel. Although the Coastal Power court added that the other Shelton factors had not been met, it also observed that the Shelton test was "intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." Id.

In an earlier case, a court in this district has found that Shelton was inapplicable where a plaintiff in a breach of contract case sought to depose the attorney that had negotiated the contract on behalf of the defendants, even though defendants argued that, while the attorney was not attorney of record, he continued to advise them with respect to the lawsuit. Anserphone of New Orleans, Inc. v. Protocol Commc'ns, Inc., No. CIV.A. 01-3740, 2002 WL 31016572, at *2 (E.D. La. Sept. 10, 2002). The court in Anserphone found the negotiating attorney was not "opposing counsel" for purposes of Shelton and that he could be deposed because he possessed information relevant to his involvement in the negotiation and drafting of the contract at issue in the lawsuit, as well as his communications with plaintiffs' counsel during the negotiations regarding additional information requested by plaintiffs. Id.

Here, the parties interpret the Settlement Agreement differently. In the pending Motions[2] for Summary Judgment, both parties urge the District Judge to interpret the Settlement Agreement in their favor as a matter of law, without consideration of extrinsic evidence. Under both Louisiana and maritime law, [3] the court will not look beyond the written contract unless it is ambiguous. Rodriguez v. Olin Corp., 780 F.2d 491, 497 (5th Cir. 1986) ("Under Louisiana law, where uncertainty or ambiguity exists as to the provisions of a contract, or where the intent of the parties cannot be ascertained from the language employed, resolution of the ambiguity is a question of fact for the jury, and parol evidence regarding the parties' intent is admissible."); Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 332–33 (5th Cir. 1981) ("[T]he court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous."); see Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co., 622 F.3d 384, 391–92 (5th Cir. 2010).

The Court finds that Rice and Denny have information that is relevant to the issues in this case. If extrinsic evidence must be considered to interpret the Settlement Agreement, then their testimony may shed light into the parties' intent. There is no dispute that Rice and Denny were present at the mediation where the settlement was originally reached and that they were involved in confecting the final written release. The written agreement entered into at the mediation was signed by Denny on behalf of Hyperion. (Rec. Doc. 15-15, at 1). That written agreement included a few handwritten provisions, one of which is the very provision at issue here. Id. at 2. During the

---

[2] Hyperion filed a motion for summary judgment. In Williams' opposition, he urges that his opposition be construed as a cross motion for summary judgment.

[3] The parties do not address whether Louisiana or maritime law applies for purposes of interpreting the Settlement Agreement. Hyperion cites maritime law here and in its motion for summary judgment. However, in considering a Jones Act settlement agreement, the United States Fifth Circuit Court of Appeals has noted that "Since the settlement agreement was executed in Louisiana, Louisiana law governs its interpretation." Stipelcovich v. Sand Dollar Marine, Inc., 805 F.2d 599, 603 n.4 (5th Cir. 1986).

telephone conference, Rice reported that she had written the handwritten provisions. Any communications between Hyperion and Rice or Denny made confidentially and for the purpose of obtaining or giving legal advice are privileged and are not subject to disclosure. But, communications by Rice or Denny to others are within the scope of discovery.

The Court finds the concerns raised by <u>Shelton</u> are absent here because Rice and Denny are Hyperion's former counsel and their deposition will not impinge on representation of Hyperion in this case. Thus, the Court finds the <u>Shelton</u> factors are inapplicable. But even if they were applicable, the Court finds they have been met because as determined above, the information is relevant and at least some of it is non-privileged, the information regarding Rice and Denny's recollection of the negotiations cannot be obtained from any other source, and the information is crucial to the preparation of the case because the meaning of the contractual provision that Rice and Denny negotiated for Hyperion is at the very heart of the issues of this lawsuit. Although the parties both seem to maintain that the Settlement Agreement is unambiguous, they both argue that their opposite interpretations of the Settlement Agreement are clear. This leaves open the possibility that the Settlement Agreement will be found ambiguous. Accordingly, extrinsic evidence of intent is relevant for discovery purposes. The fact that the Court may ultimately determine that extrinsic evidence cannot be considered at trial (or on summary judgment) does not mean that the information is not discoverable or important to the case at this time.[4]

Notably, Williams' counsel during the negotiation of the Settlement Agreement has already been deposed regarding the negotiations. Hyperion has not been able to articulate a good reason why, by the same token, Hyperion's counsel during the negotiation cannot be similarly deposed.

---

[4] Although both parties claim that discovery must be "reasonably calculated to lead to admissible evidence," this language was deleted from the Federal Rules of Civil Procedure over two years ago. As noted above, Rule 26 now provides that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."

Hyperion suggested that the difference is that if Williams' original lawsuit is a Jones Act case, then Hyperion would bear the burden of proving the validity of the Settlement Agreement. Indeed, in scrutinizing a seaman's release, the court considers factors like the seaman's understanding of his rights, the adequacy of consideration, and whether the parties negotiated at arm's length. Shoemaker v. Estis Well Serv., L.L.C., 122 F. Supp. 3d 493, 518 (E.D. La. 2015). Hyperion seems to say the only relevance of counsel's testimony is regarding Williams' understanding, and not regarding the parties' intent. As determined above, however, if the Settlement Agreement is found to be ambiguous, extrinsic evidence of intent may become critical to resolution of the issues in this case.

The Court notes that its holding that the depositions of Rice and Denny shall proceed should not be construed as holding that any attorney client or work product privileges have been waived.

3. *Service of Subpoenas*

Rice and Denny argue that they were not properly served with the subpoenas for their deposition. Plaintiff has not had the opportunity to respond. The Court now holds that in light of the Court's ruling above, Plaintiff, Defendants, Rice, and Denny shall work together to find a mutually agreeable time for the deposition of Rice and Denny to proceed.

Conclusion

For the foregoing reasons, Hyperion's Motion to Quash (Rec. Doc. 33) is DENIED; and the Motion to Quash filed by Rice and Denny (Rec. Doc. 35) is DENIED. Plaintiff, Defendants, Rice, and Denny shall work together to find a mutually agreeable time for the deposition of Rice and Denny to proceed.

New Orleans, Louisiana, this 26th day of February, 2018.

                                      Janis van Meerveld
                                    United States Magistrate Judge