# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-353** |
| **TRINITY MEDICAL MANAGEMENT, L.L.C., et al.** | **SECTION: "G"(1)** |

## ORDER

In this litigation, Plaintiff Michael Williams ("Plaintiff") seeks declaratory judgment that the defense and indemnification clause of a settlement agreement between Plaintiff and Hyperion Safety Services, L.L.C. ("Hyperion") does not obligate Plaintiff to defend and/or indemnify Hyperion in litigation ongoing in the United States District Court for the Middle District of Pennsylvania.[1] Plaintiff argues that the defense and indemnification clause at issue does not cover Hyperion's contractual liability to a third party, and to read it as requiring defense and indemnification of Hyperion in the Pennsylvania litigation would violate public policy.[2] Pending before the Court is Hyperion's motion for summary judgment, in which Hyperion seeks declaratory judgment that the defense and indemnification clause is valid and enforceable and that Plaintiff owes a duty to defend and indemnify Hyperion against the claims made against Hyperion in the Pennsylvania litigation.[3] Plaintiff requests that the Court treat his opposition as his own motion for summary judgment, seeking declaratory judgment and dismissal of Hyperion's claim

---

[1] Rec. Doc. 1.

[2] *Id.*

[3] Rec. Doc. 15.

1

for defense and indemnity.[4]

Having considered the motions, the complaint, the memoranda in support and opposition, the record, and the applicable law, the Court will grant Hyperion's motion for summary judgment, and enter declaratory judgment in Hyperion's favor insofar as the defense and indemnification clause in the Settlement Agreement requires Plaintiff to defend and indemnify Hyperion against claims based on contractual liability arising from the incident that allegedly gave rise to Plaintiff's injury.

## I. Background

### A.      *Factual Background*

In connection with the motion for summary judgment, Hyperion states the following uncontested material facts.[5] Plaintiff worked for Hyperion as a safety representative and was assigned to work at Inflection Energy, LLC ("Inflection"), located in Lycoming County, Pennsylvania.[6] On January 5, 2014, Plaintiff slipped and fell, injuring his right ankle.[7] On February 14, 2014, Plaintiff filed a claim petition for worker's compensation in Pennsylvania against Hyperion.[8] On June 17, 2014, Plaintiff's worker's compensation claim was dismissed due to Plaintiff's failure to appear for a scheduled hearing.[9] On July 28, 2014, Louisiana Worker's Compensation Corporation, Hyperion's worker's compensation insurer, sent a demand letter to

---

[4] Rec. Doc. 21 at 2.

[5] Rec. Doc. 15-2.

[6] *Id*. at 1.

[7] *Id*.

[8] *Id*.

[9] *Id*.

Plaintiff's employer, asserting a lien of $20,644.81, which evidenced payments made to Plaintiff under Hyperion worker's compensation policy.[10]

On January 5, 2015, Plaintiff filed suit against Hyperion in the Eastern District of Louisiana, seeking damages for negligence under the Jones Act and for maintenance-and-cure benefits under general maritime law related to Plaintiff's January 5, 2014 injury (hereinafter, the "Louisiana Litigation").[11] The action was given Case No. 15-00011 and assigned to Section G of this Court. Plaintiff later stated in a response to requests for production that no prior or current lawsuits or worker's compensation claims existed in which he was a party.[12]

That same day, on January 5, 2015, Plaintiff, while being represented by the same attorney that filed the other lawsuit, filed suit against Inflection and U.S. Well Services, L.L.C ("U.S. Well") also in the Eastern District of Louisiana seeking damages related to Plaintiff's January 5, 2014 injury.[13] The action was given Case No. 15-00012 and assigned to Section F of this Court. Plaintiff did not note the related litigation on the Civil Cover Sheet in the lawsuit against Inflection and U.S. Well.[14] On April 2, 2015, Civil Action No. 15-00012 was transferred to the Middle District of Pennsylvania (hereinafter, "the Pennsylvania Litigation").[15]

On September 22, 2015, U.S. Well filed a third-party complaint against Hyperion in the

---

[10] *Id.* at 2.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* Plaintiff does not dispute this fact but states in response, "Unable to admit or deny due to non-specificity; objection as to relevance to summary judgment." Rec. Doc. 21-3 at 1.

[15] *Id.*

Pennsylvania Litigation, seeking contribution and indemnification from Hyperion subject to a Master Service Agreement.[16]

On January 11, 2016, Plaintiff and Hyperion held a mediation regarding the Louisiana Litigation, during which a Mediation Agreement was signed.[17] The Mediation Agreement provided: "Plaintiff agrees to defend, indemnify and hold harmless Trinity and Hyperion from and against any and all claims arising out of this incident, including, but not limited to any contribution or tort indemnity claims by U.S. Well Services, LLC and Inflection Energy, LLC."[18]

On February 6, 2016, Plaintiff and Hyperion executed a "Release, Receipt, and Indemnification Agreement" (the "Settlement Agreement") for the Louisiana Litigation, which contained the following acknowledgment: "It is specifically understood and agreed that Michael Williams reserves all rights he has against Inflection Energy, LLC and U.S. Well Services, LLC. Inflection Energy, LLC and U.S. Well Services, LLC are not released parties."[19] The Settlement Agreement also contained the following defense and indemnification clause:   **Michael Williams agrees to defend, indemnity [sic], and hold harmless Trinity and Hyperion from and against any and all claims arising out of this incident, including, but not limited to any contribution or tort indemnity claims by U.S. Well Services, LLC and Inflection Energy, LLC.**"[20]

At the time of the execution of the Settlement Agreement, which ended the Louisiana Litigation, Plaintiff attested that he (1) was capable of fully understanding the terms and conditions

---

[16] *Id.* at 3.

[17] *Id.*

[18] *Id.* at 4.

[19] *Id.*

[20] *Id.* (bold in original).

4

of this agreement, (2) was fully aware of all his legal rights arising out of or resulting from the accident and injury sustained by him on January 5, 2014, and (3) consulted with an attorney as to his rights and remedies and the terms of the Settlement Agreement.[21]

On September 26, 2016, Plaintiff filed a second claim petition for worker's compensation against Hyperion in Pennsylvania.[22] On the claim petition for worker's compensation filed on September 26, 2016, Plaintiff was asked, "Is there other pending litigation in this case?"[23] Plaintiff checked the box marked "No."[24] On January 3, 2017, Hyperion sent its defense to Plaintiff and demanded Plaintiff defend, indemnify, and hold harmless Hyperion against any and all claims made by U.S. Well in the Pennsylvania Litigation.[25]

In addition to the uncontested facts stated by Hyperion, Plaintiff asserts that there is no evidence that Plaintiff received additional compensation for the specific relinquishment of his rights as a seaman, pursuant to the Settlement Agreement whereby Plaintiff agreed to defend, indemnify, and hold harmless Hyperion.[26] Plaintiff also asserts that Plaintiff's counsel denied there was any additional compensation, whether offered by Hyperion or received by Plaintiff.[27]

Furthermore, Plaintiff asserts that he did not understand that he was entering into an

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Rec. Doc. 21-3 at 3.

[27] *Id.*

agreement that had the effects portrayed by Hyperion's pending motion for summary judgment.[28]

### B. Procedural Background of Litigation Arising out of Plaintiff's Injury on January 5, 2014

#### 1. Worker's Compensation Claims

On February 14, 2014, Plaintiff filed a claim petition for worker's compensation in Pennsylvania against Hyperion.[29] That claim was dismissed on June 17, 2014 because Plaintiff failed to appear for a scheduled hearing.[30] On September 26, 2016, Plaintiff filed a second claim petition for worker's compensation against Hyperion in Pennsylvania.[31] On December 22, 2016, Plaintiff's second worker's compensation claim against Hyperion in Pennsylvania was dismissed.[32]

#### 2. The Louisiana Litigation

On January 5, 2015, Plaintiff filed suit against Hyperion in the Eastern District of Louisiana pursuant to the Jones Act and general maritime law.[33]

On February 6, 2016, Plaintiff and Hyperion settled the Eastern District of Louisiana action and executed the Settlement Agreement containing the defense and indemnification clause at issue in the instant motion before this Court.[34]

---

[28] *Id.* at 4.

[29] Rec. Doc. 15-1 at 2.

[30] *Id.*

[31] *Id.* at 5.

[32] *Id.* (citing Exhibit P, Decision Rendered Cover Letter).

[33] *Id.* at 2.

[34] *Id.* at 4.

### 3. The Pennsylvania Litigation

On January 5, 2015, Plaintiff filed suit against Inflection and U.S. Well in the Eastern District of Louisiana.[35]  On April 2, 2015, Plaintiff's lawsuit was transferred to the Middle District of Pennsylvania.[36]  On September 22, 2015, U.S. Well filed a third-party complaint against Hyperion, seeking contribution and indemnification from Hyperion subject to a Master Service Agreement.[37]  On January 3, 2017, Hyperion sent its defense to Plaintiff and demanded Plaintiff defend, indemnify, and hold harmless Hyperion against any and all claims made by U.S. Well in the Pennsylvania Litigation, pursuant to the Settlement Agreement.[38]

### 4. The Litigation Pending Before This Court

On January 13, 2017, Plaintiff filed a complaint in this Court seeking declaratory judgment regarding the interpretation and/or legal effect of the defense and indemnification clause contained in the Settlement Agreement.[39]  On November 14, 2017, Hyperion filed a motion for summary judgment seeking declaration that the Settlement Agreement is valid and enforceable and that Plaintiff owes Hyperion a duty to defend and indemnify Hyperion against the claims made against it in the Pennsylvania Litigation.[40]  On November 28, 2017, Plaintiff filed his opposition, in which Plaintiff requested the Court treat his opposition as Plaintiff's own motion for summary judgment

---

[35] *Id.*

[36] *Id.* at 2.

[37] *Id.* at 3.

[38] *Id.* at 6.

[39] Rec. Doc. 1.

[40] Rec. Doc. 21

and enter a declaratory judgment dismissing Hyperion's claim for defense and indemnity.[41] Alternatively, Plaintiff requested, should the Court find that summary judgment is not available to Hyperion because a question exists as to Plaintiff's intent, understanding, or compensation, Plaintiff requests the Court deny the motion because there are genuine issue(s) of material fact.[42] Proceedings in the Pennsylvania Litigation have been stayed pending the outcome of the declaratory judgment action before this Court.[43]

## II. Parties' Arguments

### A. *Hyperion's Arguments in Support of the Motion for Summary Judgment*

#### 1. The Settlement Agreement Between Plaintiff and Hyperion Is Valid and Enforceable

Hyperion first argues that Plaintiff was not a seaman as defined by the Jones Act at the time of his injury.[44] Hyperion contends that by choosing to elect and receive worker's compensation, Plaintiff is precluded from asserting his status as a seaman pursuant to the Jones Act.[45] Moreover, Hyperion asserts, Plaintiff's claimed status as a seaman is "an attempt to recover three times for the same ankle injury."[46]

Even if Plaintiff is a seaman as defined by the Jones Act, Hyperion contends that the Settlement Agreement is still valid and enforceable.[47] Hyperion acknowledges that "a seaman's

---

[41] *Id.* at 2.

[42] *Id.*

[43] Rec. Doc. 15-1 at 6 (citing Exhibit R, Order, Rec. Doc. 105 in the Pennsylvania Litigation, C.A. No. 15-00675).

[44] *Id.* at 8.

[45] *Id.*

[46] *Id.*

[47] *Id.*

release or settlement of his rights must be carefully scrutinized."[48] Hyperion further acknowledges

that on a motion for summary judgment enforcing a seaman's settlement agreement, "courts have

generally looked to whether the parties have negotiated at arms-length and in apparent good faith,

whether the competency of counsel or the adequacy of medical or legal advice is questioned, and

whether there is any appearance of 'taint or fraud, deception, coercion or overreaching . . . in the

negotiations eventuating in the settlement.'"[49] Hyperion argues that the Settlement Agreement

was negotiated at arms-length and in good faith and that Plaintiff was fully aware of his rights

when he executed the Settlement Agreement.[50] In fact, Plaintiff was represented by counsel. Thus,

Hyperion contends that the Agreement is valid and enforceable even under the heightened standard

applied to contracts involving Jones Act seamen.[51]

### a. The Settlement Agreement Was Negotiated at Arms-Length and in Good Faith

Hyperion asserts that the Settlement Agreement executed between Plaintiff and Hyperion

was the result of meaningful negotiations and contained clauses that were beneficial to both

parties.[52] Hyperion contends that Plaintiff and Hyperion agreed that Plaintiff could pursue any

claims related to his injuries against other parties, including U.S. Well and that Plaintiff explicitly

reserved his right to seek other recovery for his injuries outside the Jones Act or general maritime

---

[48] *Id.* at 9 (citing *Castillo v. Spiliada Mar. Corp.*, 937 F.2d 240, 244 (5th Cir. 1991) (quoting *Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 248, 63 S.Ct. 246, 87 L.Ed. 239 (1942)); *Baker v. Helix Energy Sols. Grp., Inc.*, 469 F. App'x 327, 329 (5th Cir. 2012)).

[49] *Id.* (citing *Borne v. A & P Boat Rentals No. 4, Inc.*, 780 F.2d 1254 (1986); *Strange v. Gulf & South American Steamship Co., Inc.*, 495 F.2d 1235, 1236 (5th Cir. 1974); *Simpson v. Lykes Bros.*, 22 F.3d 601, 602 (5th Cir. 1994)).

[50] *Id.*

[51] *Id.* at 9–14.

[52] *Id.* at 9.

law, such as through a worker's compensation claim.[53]  In exchange for agreeing to allow Plaintiff to pursue claims against Inflection and U.S. Well, Hyperion contends that Plaintiff and Hyperion agreed Plaintiff would defend and indemnify Hyperion should Inflection or U.S. Well Services seek contribution or indemnity from Hyperion.[54]

Hyperion argues that Plaintiff admitted that he was legally capable of entering into a binding contract on the date he signed the Settlement Agreement.[55]  Furthermore, Hyperion asserts, "the undisputed record evidence proves Plaintiff and his counsel were aware of U.S. Well's Third-Party Demand for defense and indemnity from Hyperion in the Pennsylvania Litigation."[56]

According to Hyperion, it is undisputed that Plaintiff was represented by Marcus Spagnoletti in both the litigation before the Eastern District of Louisiana and the Pennsylvania Litigation, and therefore, Plaintiff and Plaintiff's counsel knew about U.S. Well's third-party complaint against Hyperion in the Pennsylvania Litigation.[57]  However, Hyperion asserts, Hyperion was represented by different counsel in the separate actions, and Hyperion's counsel in the Eastern District of Louisiana case did not know about the Pennsylvania litigation until late 2015.[58]  Thus, according to Hyperion, any claim that Hyperion was somehow acting in "bad faith" by agreeing to the defense and indemnification clause contained in Settlement Agreement is

---

[53] *Id.* at 10.

[54] *Id.*

[55] *Id.* at 11.

[56] *Id.*

[57] *Id.* at 11–12.

[58] *Id.* at 11.

completely without merit."[59]

### b. Plaintiff Was Fully Aware of His Rights When He Executed the Settlement Agreement

Hyperion acknowledges that the party claiming a matter has settled bears the burden of demonstrating that a seaman's release of claims was "executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights."[60] However, Hyperion argues that the factors for determining whether a seaman had an informed understanding of his rights—adequacy of consideration, and the nature of medical and legal advice available to him—weigh in favor of enforcement here.[61]

Specifically, Hyperion avers that Plaintiff has not claimed that (1) he did not fully understand his rights when he executed the Settlement Agreement; (2) he was not properly compensated; (3) he did not understand the Settlement Agreement; and (4) he was inadequately represented by his attorney.[62] In contrast, Hyperion asserts, Plaintiff attested that the Settlement Agreement was explained to him in full and that he understood the terms of the Settlement Agreement.[63] Hyperion further asserts that Plaintiff attested that he fully understood his legal rights and, after consulting with his attorney, agreed to the terms of the Settlement Agreement in exchange for settlement payment.[64] Accordingly, Hyperion argues, there is no genuine issue of

---

[59] *Id.*

[60] *Id.* at 12 (citing *Garrett v. Moore– McCormack Co.*, 317 U.S. 239, 248 (1942); *Double J. Marine, LLC v. Nuber*, No. CIV.A. 13- 5825, 2013 WL 6502866, at *2 (E.D. La. Dec. 11, 2013)).

[61] *Id.*

[62] *Id.* at 13.

[63] *Id.*

[64] *Id.*

material fact regarding Plaintiff's understanding of the Settlement Agreement and his voluntary acceptance of its terms with the assistance of competent counsel.[65] Thus, Hyperion contends, this Court should grant Hyperion's Motion for Summary Judgment finding the Settlement Agreement is valid and enforceable.[66]

### 2. The Defense and Indemnification Clause Contained in the Settlement Agreement Between Plaintiff and Hyperion Is Valid and Enforceable

Hyperion next asserts that federal maritime law governs the validity and interpretation of the Settlement Agreement and that interpretation of contractual language in an indemnity contract is a question of law suitable for summary judgment.[67] Hyperion further asserts that the Fifth Circuit has noted that "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties"[68] and that the primary purpose and function of a court in the interpretation of a maritime contract is to ascertain the intention of the parties.[69]

Hyperion argues that the defense and indemnification clause is not ambiguous.[70] Rather, according to Hyperion, the "clear language of the indemnification clause obligates Plaintiff to defend and indemnify Hyperion from any and all claims made by U.S. Well."[71] Hyperion contends that the phrase, "any and all claims," clearly and unequivocally encompasses claims for contractual

---

[65] *Id*. at 14.

[66] *Id*.

[67] *Id*. at 14–15.

[68] *Id*. at 15 (citing *Corbitt v. Diamond M. Drilling Co*., 654 F.2d 329, 333 (5th Cir.1981)).

[69] *Id*. at 16 (citing *East v. Premier, Inc.*, 98 Fed. Appx. 317, 319 (5th Cir.2004)).

[70] *Id*. at 16.

[71] *Id*.

indemnity.[72] Furthermore, Hyperion asserts that the words, "any and all claims," would be rendered meaningless if the application of the defense and indemnification clause was limited to claims explicitly stated after the phrase, "including, but not limited to."[73] Last, Hyperion asserts that Plaintiff was aware that U.S. Well had demanded contractual indemnity from Hyperion and had already filed a Third-Party Complaint, seeking defense and indemnity in the Pennsylvania Litigation at the time of the execution of the Settlement Agreement; and therefore, U.S. Well's claim for contractual indemnity was "within the contemplation of the parties."[74]

### 3. The Defense and Indemnification Clause Is Not Unworkable, Unconscionable, or Against Public Policy

Hyperion asserts that Plaintiff's argument that the defense and indemnification clause is unworkable, unconscionable, or against public policy is meritless.[75] In addition, Hyperion asserts that Plaintiff should not be allowed to submit any extrinsic evidence, if any can be obtained, to support these claims because the defense and indemnification clause is unambiguous.[76] Hyperion points out that Plaintiff offers no legal support in requesting that the Settlement Agreement be interpreted in Plaintiff's favor "given that the Plaintiff is a seaman and ward of the Court."[77]

Hyperion further asserts that Plaintiff's arguments that the defense and indemnification clause is unconscionable or against public policy are disingenuous because Plaintiff and his attorney knew about U.S. Well's claim for contractual indemnity against Hyperion at the time of

---

[72] *Id.*

[73] *Id.* at 17.

[74] *Id.*

[75] *Id.* at 18.

[76] *Id.*

[77] *Id.* at 18–19.

the January 11, 2016 mediation and signing of the Settlement Agreement.[78] In addition, Hyperion argues that Plaintiff should be estopped from claiming unconscionability because Plaintiff has unclean hands and acted in bad faith insofar as he seeks to collect from both the worker's compensation scheme and under the Jones Act for the same injury.[79] Furthermore, Defendant asserts that Plaintiff's verified response indicating, "None," to a request for production of copies of all prior or current lawsuits or worker's compensation claims in which Plaintiff was a party, was indeed false.[80] Moreover, Hyperion asserts that Plaintiff attempted to recover four times for the same injury and was not forthcoming in either the Eastern District of Louisiana proceedings or the Pennsylvania Litigation about the existence or events taking place in the other court.[81] For these reasons, Hyperion contends that Plaintiff's argument that the Settlement Agreement is unconscionable or against public policy is without merit and should be disregarded by the Court.[82]

### B.    *Plaintiff's Arguments in Opposition to Hyperion's Motion for Summary Judgment*

#### 1.  **The Indemnity Clause Contained in the Settlement Agreement Between Plaintiff and Hyperion Must Be Interpreted in Plaintiff's Favor**

Plaintiff first asserts that "courts are required to interpret indemnity agreements consistently with established social policies."[83] To that end, Plaintiff asserts that "seamen are wards of the court and that their actual awareness of the substance of their releases requires

---

[78] *Id.* at 19.

[79] *Id.*

[80] *Id.* at 20.

[81] *Id.* at 21.

[82] *Id.*

[83] Rec. Doc. 21 at 10 (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1217 (5th Cir. 1986)).

14

heightened scrutiny."[84]

Plaintiff contends that the putative defense and indemnity clause contained in the Settlement Agreement directly conflicts with another provision contained in the Settlement Agreement, which states: "It is specifically understood and agreed that Michael Williams reserves all rights he may have against Inflection Energy LLC and U.S. Well Services, LLC. Inflection Energy LLC and U.S. Well Services, LLC are not Released Parties."[85] According to Plaintiff, any putative agreement whereby Plaintiff would be personally responsible for defending and/or indemnifying Hyperion for costs and expenses made by Inflection and U.S. Well Services, LLC in connection with such litigation would be unworkable and counterproductive.[86] Given that Plaintiff's settlement arose out of a claim in which he alleged he was a Jones Act seaman, Plaintiff argues that he is a ward of the court, and therefore, the Settlement Agreement must be interpreted in his favor.[87] Accordingly, Plaintiff argues, the inconsistency between the defense and indemnity clause falls outside the permissible bounds of a settlement agreement pursuant to the Jones Act, and therefore, the clause is not enforceable.[88] In support, Plaintiff points to *Parks v. Dowell Div. of Dow Chem. Corp.*, a Fifth Circuit case in which Plaintiff asserts that based on admiralty courts' tradition of protecting seamen, the court refused to enforce an indemnity provision absent a showing that the defendants had (1) fully and fairly explained the indemnity provision to the

---

[84] *Id.*

[85] *Id.* at 11.

[86] *Id.*

[87] *Id.*

[88] *Id.* at 11–12 (citing *Parks v. Dowell Div. of Dow Chem. Corp.*, 712 F.2d 154, 160 (5th Cir. 1983)).

plaintiff and (2) had provided additional compensation to the plaintiff for the release of his rights.[89]

### 2. The Indemnity Clause Contained in the Settlement Agreement Between Plaintiff and Hyperion Is Over-Broad and Unworkable

Plaintiff argues that if the defense and indemnification clause is interpreted as requiring Plaintiff to defend, indemnify, and hold harmless Hyperion, not only from any and all claims arising out of Plaintiff's accident at issue in the pending personal-injury lawsuit in Pennsylvania, but also from contribution or tort indemnity claims brought in any subsequent litigation by third parties, the result would be unacceptably sweeping and uncertain.[90] Plaintiff asserts that such a result was not his intent or the intent of his counsel, nor is such reflected in the total amount of money Plaintiff received in settlement of his Jones Act claim.[91] Moreover, Plaintiff asserts, Hyperion has failed to carry its burden of proof that Plaintiff or his counsel intended to enter into the type of sweeping, open-ended agreement that Hyperion supposedly envisions or that Plaintiff received bargained-for compensation for such a sweeping agreement.[92]

### 3. The Defense and Indemnity Clause Contained in the Settlement Agreement Between Plaintiff and Hyperion Is Not Sufficiently Specific to Satisfy the Notice Requirements Imposed by Maritime Law

Citing *Corbitt v. Diamond M. Drilling Co.*, Plaintiff argues that the Fifth Circuit has held that indemnification clauses like the one here do not include indemnification for contractual claims asserted by third parties.[93] As in *Corbitt*, Plaintiff avers, the defense and indemnification clause in the Settlement Agreement generally provides that Plaintiff will indemnify Hyperion for "all

---

[89] *Id.* at 12.

[90] *Id.* at 13.

[91] *Id.*

[92] *Id.* at 14.

[93] *Id.* at 15 (citing *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)).

claims."[94] However, Plaintiff contends that the defense and indemnification clause in the Settlement Agreement does not expressly require Plaintiff to indemnify anyone against Hyperion's contractual liability to third persons, as is required pursuant to the Fifth Circuit's decision in *Corbitt*.[95] Accordingly, Plaintiff argues, the indemnification provision should be interpreted as excluding contractual liability from indemnification and Hyperion's motion for summary judgment should be denied.[96]

### 4. Enforcement of the Indemnity Clause Contained in the Settlement Agreement Between Plaintiff and Hyperion Would Create a Conflict of Interest and Thus Violate Public Policy

Plaintiff argues that the indemnity clause in the Settlement Agreement is voidable because the enforcement that it proposes would create an impermissible conflict of interest in which one party to a lawsuit would be required to defend and indemnify a party with directly opposite and conflicting interests.[97] Citing *Lirette v. Popich Bros. Water Transport, Inc.*, Plaintiff contends that "any form of defense and indemnification would create an ethical dilemma and lead to the impermissible result that the attorney might have to defend one client at another's–i.e., an adversary's–expense."[98] Plaintiff asserts that Hyperion has unclean hands in submitting the Settlement Agreement, knowing that it would potentially violate Plaintiff's rights as an injured seaman, as well as his attorney's ethical requirements.[99] Therefore, Plaintiff argues, Hyperion's

---

[94] Id.

[95] *Id.*

[96] *Id.* at 16.

[97] *Id.*

[98] *Id.* at 16–17 (citing 699 F.2d 725, 727 n.7 (5th Cir. 1983)).

[99] *Id.* at 17.

motion for summary judgment should be denied, because Plaintiff contends that enforcement of the Settlement Agreement would violate public policy, as counsel for Plaintiff would be faced with conflicts of interest.[100]

### 5. Enforcement of the Indemnity Clause Contained in the Settlement Agreement Between Plaintiff and Hyperion Would Be Unconscionable and Violate Public Policy

Finally, Plaintiff argues that the defense and indemnification clause in the Settlement Agreement, as advocated by Hyperion, is unconscionable when applied to Plaintiff, as "an injured seaman who can afford neither the defense nor indemnification of an adverse party, and whose ability to earn a living was retarded by the accident made [sic] the basis of the underlying litigation."[101] Citing *Bass v. Phoenix Seadrill/78, Ltd.*, Plaintiff asserts that courts must "be particularly vigilant to guard against overreaching when a seaman purports to release his rights to compensation for personal injuries."[102] Moreover, Plaintiff asserts, "Courts' ultimate concern in these cases is whether, at the time the seaman relinquished those rights, he did so with an informed understanding of his rights and a full appreciation of the consequences of executing the release."[103] Accordingly, Plaintiff argues that Hyperion's motion for summary judgment should be denied, as enforcement would violate public policy favoring heightened scrutiny of contracts to which a seaman is party.[104]

---

[100] *Id.*

[101] *Id.*

[102] *Id.* (citing *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1160–61 (5th Cir.1985)).

[103] *Id.* at 17–18 (citing *Cates v. United States*, 451 F.2d 411, 414 (5th Cir.1971)).

[104] *Id.*

### C.   Hyperion's Arguments in Reply

### 1.  Plaintiff Understood the Settlement Agreement and Scope of the Defense and Indemnification Clause

In reply, Hyperion argues that the "undisputed record evidence shows Mr. Williams's attorney, Marcus Spagnoletti, received notice of U.S. Well's Third-Party Complaint in the Pennsylvania Litigation and knew U.S. Well was seeking contribution and indemnification from Hyperion before Mr. Williams agreed to the terms of the Settlement Agreement."[105] In addition, Hyperion argues that Plaintiff previously attested that he fully understood the Settlement Agreement and all its terms and conditions, which would include the defense and indemnification clause.[106]

With respect to the scope of the defense and indemnification clause, Hyperion argues that the clause is sufficiently specific when subjected to the established rules of interpretation for maritime contracts.[107] Hyperion argues that pursuant to *Corbitt v. Diamond M. Drilling*, a contract of indemnity "should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage."[108] Here, Hyperion argues, "[t]he uncontroverted record evidence establishes the parties intended for the indemnification clause to include U.S. Well's claim for contractual indemnity from Hyperion in the Pennsylvania

---

[105] Rec. Doc. 27 at 2.

[106] *Id.*

[107] *Id.* at 3.

[108] *Id.* (citing *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir.1981)).

Litigation."[109]

## 2. Additional Compensation is Not Necessary to Enforce the Defense and Indemnification Clause

Hyperion argues that the Fifth Circuit's decision in *Parks v. Dowell Division of Dow Chemical Corporation* is not applicable to this case, and therefore, Plaintiff is not entitled to compensation "above and beyond" the amount he obtained to settle his Jones Act case.[110] According to Hyperion, in *Parks*, the Fifth Circuit held that the indemnification clause in the seaman's contract with his employer was not enforceable, as "admiralty courts have refused to enforce agreements in which seaman have relinquished their protective rights absent a clear showing that the agreement is fair and fully compensated."[111] Hyperion explains further, the Fifth Circuit found the indemnification clause in the seaman's contract with his employer was "never fully explained to [the seaman] and there is no evidence he received additional compensation for the relinquishment of his rights as a seaman."[112]

Hyperion argues that the facts in this case are distinguishable from those in *Parks* for several reasons.[113] First, Hyperion argues, unlike the seaman in *Parks*, Plaintiff in this case has never been judicially determined to be a Jones Act seaman.[114] Second, Hyperion argues, Plaintiff in this case did not agree to relinquish any of his rights as a Jones Act seaman by agreeing to the

---

[109] *Id*. at 4.

[110] *Id*. at 5 (citing *Parks v. Dowell Div. of Dow Chem. Corp.*, 712 F. 2d. 154 (5th Cir. 1983)).

[111] *Id*. (quoting 712 F. 2d. at 160).

[112] *Id*.

[113] *Id*. at 6.

[114] *Id*.

defense and indemnification clause in the Settlement Agreement, whereas in *Parks*, the indemnification agreement containing a relinquishment of rights was in Parks' non-negotiated employment contract.[115] Here, Hyperion argues, Plaintiff, in fact, exercised those rights by suing Hyperion pursuant to the Jones Act, and Plaintiff was compensated for agreeing to indemnify Hyperion in the Settlement Agreement.[116] Last, Hyperion argues, unlike in *Parks*, Plaintiff negotiated the defense and indemnification clause with the assistance of counsel, and the defense and indemnification clause and entire Settlement Agreement was fully explained to Plaintiff.[117] Accordingly, Hyperion contends, the Court should enforce the Settlement Agreement and grant Hyperion's motion for summary judgment.[118]

### D. *Hyperion's Supplemental Memorandum in Support*

In the supplemental memorandum, Hyperion argues that any "misunderstanding" Plaintiff may have as to the scope of the defense and indemnification clause results from his attorney's failure to properly explain the provision to Plaintiff and is not due to any vague or ambiguous language within the provision itself.[119] Hyperion asserts that in Plaintiff's deposition testimony Plaintiff alleges that the defense and indemnification clause was never explained to him by his attorney; however, Hyperion argues that Plaintiff's assertion contradicts Plaintiff's prior signed statements.[120]

---

[115] *Id.*

[116] *Id.* at 7.

[117] *Id.*

[118] *Id.*

[119] Rec. Doc. 60.

[120] *Id.* at 4–5.

### E. *Plaintiff's Supplemental Memorandum in Opposition*

Plaintiff contests Hyperion's characterization of Plaintiff and his counsel Marcus Spagnoletti's deposition testimony, arguing that the absence of deposition testimony stating that the release was explained to Plaintiff does not prove that the Settlement Agreement was not explained.[121] Plaintiff argues that the deposition excerpts show only that Plaintiff or Marcus Spagnoletti could not answer certain questions posed by counsel for Hyperion because of attorney-client privilege or because they were unable to recall certain conversations.[122] Plaintiff points to the Certificate of Attorney, where Marcus Spagnoletti contemporaneously attested that he explained to Plaintiff the rights Plaintiff was releasing and where Plaintiff confirmed to Spagnoletti that he fully understood those rights.[123]

### III. Legal Standard on Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[124] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[125] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

---

[121] Rec. Doc. 64.

[122] *Id.* at 2.

[123] *Id.* at 5.

[124] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[125] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[126] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[127] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[128]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[129] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[130] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[131] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[132] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable

---

[126] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[127] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[128] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[129] *Celotex*, 477 U.S. at 323.

[130] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[131] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[132] *Little*, 37 F.3d at 1075.

trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[133]

It is well settled that "summary judgment in Jones Act cases is rarely appropriate and that even marginal cases ordinarily should go to the jury."[134] However, the Fifth Circuit has held that a district court may resolve an issue involving the determination of parties' intentions with respect to an agreement governed by maritime law, where the question may be resolved as a matter of law without relying upon any disputed issues of material fact.[135]

## IV. Analysis

### A. Whether the Indemnity Clause Contained in the Settlement Agreement Is Enforceable in Light of the Heightened Scrutiny Courts Apply to Contracts to Which a Jones Act Seaman Is Party

As an initial matter, Plaintiff argues that the indemnity provision contained in the Settlement Agreement must be interpreted in his favor because seamen are wards of the court and their actual awareness of the substance of their releases requires heightened scrutiny. Hyperion argues, in turn, that even if Plaintiff is a seaman as defined by the Jones Act, the Settlement Agreement is still valid and enforceable because the Settlement Agreement was negotiated at arms-length and in good faith, and Plaintiff was fully aware of his rights when he executed the Settlement Agreement. Although the issue of whether Plaintiff is a seaman as defined by the Jones Act was

---

[133] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987).

[134] *Buras v. Commercial Testing & Eng'g Co.*, 736 F.2d 307, 309 (5th Cir. 1984) (citing *Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir.1983)).

[135] *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981) (affirming the district court's resolution on summary judgment of whether parties intended to give the indemnitee a right of indemnification for its contractual liability to a third party pursuant to an indemnification agreement between indemnitor and indemnitee, as a matter of law).

not decided by this Court prior to the execution of the Settlement Agreement, Plaintiff cannot prevail on his assertion that the contract is invalid or voidable, even under the heightened standard applicable to Jones Act seamen, because neither party argues that the parties did not negotiate at arms-length or in bad faith, the competency of the legal advice given to Plaintiff has not been challenged, and because there are no allegations of fraud or deception.

"[A] seaman's release or settlement of his rights must be carefully scrutinized."[136] On a motion for summary judgment enforcing a seaman's settlement agreement, courts have generally looked to whether the parties have negotiated at arms-length and in apparent good faith, whether the competency of counsel or the adequacy of medical or legal advice is questioned, and whether there is any appearance of "taint or fraud, deception, coercion or overreaching . . . in the negotiations eventuating in the settlement."[137]

In this case, the parties do not dispute the competency of counsel and the adequacy of legal advice provided to Plaintiff in entering the Settlement Agreement.[138] Further, Plaintiff does not allege that Hyperion acted fraudulently, deceptively, or coercively in the negotiations eventuating in the Settlement Agreement.

Rather, Plaintiff relies on *Parks v. Dowell Div. of Dow Chem. Corp.*, a Fifth Circuit case in which Plaintiff asserts that based on admiralty courts' tradition of protecting seamen, the court

---

[136] *Castillo v. Spiliada Mar. Corp.*, 937 F.2d 240, 244 (5th Cir. 1991) (quoting *Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 248 (1942)); *Baker v. Helix Energy Sols. Grp., Inc.*, 469 F. App'x 327, 329 (5th Cir. 2012).

[137] *Borne v. A & P Boat Rentals No. 4, Inc.*, 780 F.2d 1254 (5th Cir. 1986); *see also Strange v. Gulf & South American Steamship Co., Inc.*, 495 F.2d 1235, 1236 (5th Cir. 1974); *Simpson v. Lykes Bros.*, 22 F.3d 601, 602 (5th Cir. 1994).

[138] In the supplemental memorandum, Hyperion asserts that Plaintiff contradicts himself as to whether the indemnification provision was fully explained to him by his counsel. Rec. Doc. 60. However, in Plaintiff's supplemental memorandum in opposition, Plaintiff states unequivocally that Plaintiff's counsel Marcus Spagnoletti explained which rights Plaintiff was releasing, including indemnity provisions, by signing the Settlement Agreement. Rec. Doc. 64 at 5.

refused to enforce an indemnity provision absent a showing that the defendants had (1) fully and fairly explained the indemnity provision to the plaintiff and (2) had provided additional compensation to the plaintiff for the release of his rights.[139]

However, this case is distinguishable from *Parks*. In *Parks*, the indemnification provision at issue was contained in an employment contract between the plaintiff, a seamen, and the defendant.[140] In that case, the Fifth Circuit determined that "[t]he indemnification clause in the contract was never fully and fairly explained to [the plaintiff] and there [was] no evidence that he received additional compensation for the relinquishment of his rights as a seaman."[141] Here, at the time of the execution of the Settlement Agreement, Plaintiff averred he was fully aware of all his legal rights arising out of or resulting from the accident and injury allegedly sustained by him on January 5, 2014.[142] Also at the time of the execution of the Settlement Agreement, Plaintiff averred he consulted with an attorney as to his rights and remedies and the terms of the Settlement Agreement.[143] Furthermore, Plaintiff was compensated for agreeing to the terms of the Settlement Agreement through the monetary award he received in exchange for agreeing to certain terms and conditions of settlement. Therefore, the Settlement Agreement was "free of infirmities and fairly made" and does not violate the protections afforded by the Court to Jones Act seamen. The fact

---

[139] *Parks v. Dowell Div. of Dow Chem. Corp.*, 712 F.2d 154, 160 (5th Cir. 1983).

[140] *Id.* at 159.

[141] *Id.* at 160.

[142] Rec. Doc. 15-2 at 5.

[143] *Id.* In fact, Plaintiff is represented in this action by the same law firm that represented Plaintiff in both the Louisiana and Pennsylvania Litigations underlying this case and negotiated and executed the Settlement Agreement at issue here. Marcus Spagnoletti of Spagnoletti & Co. represented Plaintiff in the underlying Louisiana and Pennsylvania Litigations and advised Plaintiff on the Settlement Agreement, and Eric Rhine of Spagnoletti and Co. is representing Plaintiff in the instant matter before the Court.

that Plaintiff and his counsel now challenge the application of the defense and indemnification clause contained in the Settlement Agreement does not change the uncontroverted facts that Plaintiff was represented by counsel and that he attested at the time of settlement that he understood the terms of the Agreement.

## B. Whether the Indemnity Clause Contained in the Settlement Agreement Includes Contractual Liability Within Its Scope of Indemnity

Plaintiff argues that the indemnity clause contained in the Settlement Agreement between Plaintiff and Hyperion is not sufficiently specific to satisfy the notice requirements imposed by maritime law, which according to Plaintiff, requires express notice when a party seeks to shift its contractual liability to indemnify a third party. Hyperion argues that the clear language of the defense and indemnification clause obligates Plaintiff to defend and indemnify Hyperion from any and all claims, which includes U.S. Well's claim against Hyperion in the Pennsylvania Litigation pursuant to the Master Service Agreement. Specifically, Hyperion contends that the phrase, "any and all claims," clearly and unequivocally encompasses claims for contractual indemnity.

"When interpreting maritime contracts, federal admiralty law rather than state law applies."[144] "Under admiralty law, a contract 'should be read as a whole and its words given their plain meaning unless the provision is ambiguous.'"[145] "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous."[146] Under federal maritime law, "a court may not look

---

[144] *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.* 829 F.3d 313, 315 (5th Cir. 2016) (citing *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013)); *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22–23 (2004).

[145] *Holmes Motors, Inc.*, 829 F.3d at 315 (quoting *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009)).

[146] *In re Deepwater Horizon*, 785 F.3d 986, 994 (5th Cir. 2015) (citing *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004)).

beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous."[147]

Pursuant to the "Choice of Law and Venue Selection" provision of the Settlement Agreement, "The parties to this [Settlement Agreement] agree that it is a maritime contract and that any dispute involving the validity, interpretation, performance, breach or enforcement of this agreement shall be governed by the United States General Maritime Law . . . ."[148] Here, the parties do not argue that the language contained in the Settlement Agreement is unclear. Hyperion expressly states that the Settlement Agreement is "clear,"[149] while Plaintiff argues that the language in the Settlement Agreement would need to be more specific, if the defense and indemnification provision were to be extended to contractual liability, not that the language used in the indemnity provision is unclear or ambiguous.[150] Accordingly, the Court will not consider parol evidence of the parties' intentions and will focus solely on the unambiguous language of the Settlement Agreement.[151]

In *Corbitt v. Diamond*, a case involving interpretation of a contract in maritime law, the Fifth Circuit held that a contract of indemnity should be construed to cover "all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended

---

[147] *Corbitt*, 654 F.2d at 332 (citing *Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817, 825 (5th Cir. 1975)).

[148] Rec. Doc. 1-1 at 6.

[149] Rec. Doc. 15-1 at 16.

[150] Rec. Doc. 21 at 14–15.

[151] *See Corbitt*, 654 F.2d at 332 (citing *Hicks*, 512 F.2d at 825 (5th Cir. 1975)).

to include them within the indemnity coverage."[152]  In *Corbitt*, the Purchase Order provided for indemnity "against all claims, suits, liabilities and expenses on account of personal injury . . . arising out of or in connection with performance of this Order . . . ."[153] The Fifth Circuit noted that the Purchase Order did not expressly provide that the indemnitor will indemnify the indemnitee for "[the indemnitee]'s contractual liability to third persons."[154]

Given the specific factual circumstances of *Corbitt*, the Fifth Circuit reasoned that the indemnitee's contractual duty to indemnify a third party is not the kind of liability which the parties to that agreement containing an indemnification clause intended to include within the scope of the indemnitor's duty.[155] Furthermore, the Fifth Circuit stated, "In the absence of such explicit language [requiring indemnification of the indemnitee's contractual liability], it is unreasonable to assume that [the indemnitor] intended to undertake such an unusual and surprising obligation."[156] Moreover, the Fifth Circuit articulated in *Corbitt* that there was "nothing in the contractual language itself or in the realities of the situation in which the parties executed the [indemnification agreement] which reflects any such intention."[157]

In *Breaux v. Halliburton Energy Services*, the Fifth Circuit again considered whether a district court properly decided whether an indemnity provision extended to contractual liability

---

[152] *Corbitt*, 654 F.2d at 333.

[153] *Id.*

[154] *Id.*

[155] *Id.*

[156] *Id.*

[157] *Id.* at 334.

under maritime law.[158] In *Breaux*, two parties, a contractor, Era Aviation, Inc. ("Era"), and a company, Union Oil Company of California ("Unocal"), executed an Agreement, whereby Era agreed to indemnify Unocal, as well as its contractors and subcontractors, against all claims for personal or bodily injury, disease, or death that resulted from Era's ownership, operation, maintenance, or use of aircraft under the Agreement "in each and every case, irrespective of whether any indemnitee hereunder may be alleged or proven to have been negligent . . . or otherwise legally liable."[159] In *Breaux*, one of Unocal's contractors, Haliburton Energy Services ("HES"), filed an indemnification claim against Era, when one of its employee's families sued HES related to an employment contract.[160]

On appeal, Era argued that the indemnity provision did not extend to contractual liability, relying on the Fifth Circuit's decision in *Corbitt*, to assert that more specific language must be included to indicate the parties intended to include indemnity for contractual liability.[161] The Fifth Circuit distinguished the facts in *Breaux* from those present in *Corbitt* when assessing whether the language in an indemnity agreement required Era to indemnify HES against contractual liability.[162] The Fifth Circuit reasoned that in *Corbitt*, the indemnitor was asked to indemnify an undisclosed third party, while in *Breaux*, HES is listed as an indemnitee in the ERA/Unocal Agreement, because it was acting as a contractor for Unocal.[163] The Fifth Circuit reasoned that Era had express

---

[158] *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358 (5th Cir. 2009).

[159] *Id.* at 361–62.

[160] *Id.* at 360.

[161] *Id.* at 365.

[162] *Id.*

[163] *Id.*

notice of its indemnity obligation to HES for any and all liability arising out of those claims and referred to language in the indemnity provision that stated that Era would indemnity Unocal and its contractors, as to "each and every case, irrespective" of whether the indemnitee was "negligent . . . or otherwise legally liable."[164]

In this case, it is undisputed that U.S. Well filed a third-party complaint against Hyperion in the Pennsylvania Litigation, seeking contribution and indemnification from Hyperion subject to a Master Service Agreement.[165] Moreover, Hyperion seeks defense and indemnification from Plaintiff for its contractual liability to U.S. Well arising out of the Master Service Agreement. It is further undisputed that the Settlement Agreement contains the following defense and indemnification clause, "**Michael Williams agrees to defend, indemnity, and hold harmless Trinity and Hyperion from and against any and all claims arising out of this incident, including, but not limited to any contribution or tort indemnity claims by U.S. Well Services, LLC and Inflection Energy, LLC.**"[166]

Here, the factual circumstances differ significantly from those in *Corbitt* and more closely align with *Breaux*. In *Corbitt*, there was no indication that the indemnitor had any knowledge of the indemmnitee's contractual liability to any third parties. In this case, it is undisputed that Plaintiff was represented by Marcus Spagnoletti in both the Louisiana Litigation and the Pennsylvania Litigation, and therefore that Plaintiff and Plaintiff's counsel knew about U.S. Well's

---

[164] *Id.* at 366.

[165] Rec. Doc. 15-2 at 3.

[166] Rec. Doc. 15-2 at 4 (bold in original).

third-party complaint against Hyperion in the Pennsylvania Litigation.[167] The record shows that Spagnoletti enrolled as counsel in the Pennsylvania Litigation on June 17, 2015, several months before U.S. Well filed its third-party complaint against Hyperion in that case.[168] As counsel of record for Plaintiff, Spagnoletti would have received notice of the third-party complaint. Spagnoletti enrolled as counsel of record in the Louisiana Litigation on March 6, 2015.[169] In the Louisiana Litigation, Hyperion and Plaintiff executed the Settlement Agreement on February 6, 2016.[170] Therefore, Hyperion correctly argues that the "undisputed record evidence shows Plaintiff's attorney, Marcus Spagnoletti, received notice of U.S. Well's Third-Party Complaint in the Pennsylvania Litigation and knew U.S. Well was seeking contribution and indemnification from Hyperion *before* [Plaintiff] agreed to the terms of the Settlement Agreement."[171]

Furthermore, in *Corbitt*, the injured worker sued the third party, who sued the indemnitee pursuant to contractual liability, and the indemnitee sued the indemnitor pursuant to the indemnification agreement at issue. In *Corbitt*, the indemnitor was being asked to indemnify an "undisclosed third party," while in *Breaux*, the indemnitor was being required to indemnify HES, which was designated as an express indemnitee under the Agreement. Here, like the underlying facts in *Breaux*, and unlike the underlying facts in *Corbitt*, Plaintiff is being asked to defend and indemnify Hyperion, the designated indemnitee under the Settlement Agreement, and not some unknown entity or person.

---

[167] Rec. Doc. 15-1 at 11–12.

[168] Rec. Doc. 15-10.

[169] Rec. Doc. 15-11.

[170] Rec. Doc. 15-2 at 4.

[171] Rec. Doc. 27 at 2 (emphasis added).

Moreover, here, Plaintiff sued both Hyperion and U.S. Well in separate actions in the Eastern District of Louisiana, failing to inform either court of the related actions; subsequently, the litigation between Plaintiff and U.S. Well was transferred to Pennsylvania. Moreover, this is not a case of an indemnitor being unfairly obligated to defend and indemnify an indemnitee for contractual liability outside of the indemnitor's possible realm of contemplation. Plaintiff chose to litigate his claims in separate cases without acknowledging to the courts or other litigants the existence of the parallel litigation. Apparently, Plaintiff believes that this entitles him to ignore the collateral effect of the related litigations, namely, that he could, in fact, be held accountable for arguments that he made in one that affects the other. Simply because Plaintiff chose not to admit to the existence of the parallel litigation does not entitle him to immunity from the agreements he entered.

The Fifth Circuit has recognized that "[a] court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction."[172] Moreover, the circumstances of this case do not correlate with those in *Corbitt*, when the Fifth Circuit sought to protect a particular party from an unanticipated or unknown risk at the time of the settlement. Rather, the facts more closely align with the Fifth Circuit's reasoning in *Breaux*, where the parties knew or should have known of the risk presented at the time of the Settlement Agreement. Here, Plaintiff's duty to indemnify Hyperion pursuant to the Settlement Agreement for Hyperion's contractual liability to U.S. Well would not be an "unusual and surprising obligation," to the extent Plaintiff was aware that U.S.

---

[172] *Cates*, 451 F.2d at 414.

Well was seeking contractual indemnification from Hyperion prior to the execution of the Settlement Agreement, which obligates Plaintiff to indemnify Hyperion.[173] Moreover, it could be "reasonably inferred," from the facts of this case, "that the parties intended to include [contractual liability] within the indemnity coverage."[174] Given the Fifth Circuit's attention to the "realities of the situation" in reaching its determination in *Corbitt* and its decision in *Breaux*, it would not seem like a departure from the Fifth Circuit's reasoning to require Plaintiff to defend and indemnifiy Hyperion's contractual liability to Plaintiff, pursuant to the Settlement Agreement.[175]

In this case, the Settlement Agreement requires Plaintiff to defend and indemnify Hyperion against "all claims, suits, liabilities and expenses . . . ." It is well established that a basic canon of contractual interpretation requires words and phrases in a contract to be given their plain meanings.[176] Accordingly, the plain meaning of the phrase, "all . . . liabilities" in this provision envisions that every type of liability is encompassed, including contractual liability. The very contractual liability being claimed here was pending and known to Plaintiff and his counsel at the time the Settlement Agreement, which contained the defense and indemnification clause, was signed. Therefore, considering principles of contractual interpretation, the nature of admiralty jurisdiction, and the spirit of the Fifth Circuit's decisions in *Corbitt* and *Breaux*, this Court finds

---

[173] *Corbitt*, 654 F.2d at 333.

[174] *Id.*

[175] It may be that Plaintiff's claim should be against his attorney for creating and advising him to consent to the tangled web of litigation; however, that issue is not before the Court.

[176] *See Becker v. Tidewater*, 586 F.3d 358, 369 (5th Cir.2009); *see also Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir.1984)); *Cargill, Inc. v. Kopalnia Rydultowy Motor Vessel*, 304 Fed. App'x 278, 282 (5th Cir. 2008) (quoting *Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n. 6 (5th Cir. 2004) ("A contract is not ambiguous if 'its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation.'").

that the language contained in the Settlement Agreement is clear and includes defense and indemnification for the contractual liability at issue here.[177]

### C. Whether the Defense and Indemnification Clause of the Settlement Agreement, If Interpreted to Include Contractual Liability, Violates Public Policy

Hyperion argues that Plaintiff has attempted to recover four times from the same injury and was not forthcoming in either the Eastern District of Louisiana proceedings or the Pennsylvania Litigation about the existence or events taking place in the respective courts; therefore, according to Hyperion, the Settlement Agreement is not unconscionable. Plaintiff, on the other hand, argues that the defense and indemnification clause in the Settlement Agreement is unconscionable because enforcement would create an impermissible conflict of interest for Plaintiff's counsel and because Plaintiff, as a seaman, did not fully appreciate the consequences of executing the release to the extent the defense and indemnification clause covers contractual liability.

Plaintiff cites *Lirette v. Popich Bros. Water Transport, Inc.*, a case in the Fifth Circuit, for the proposition that a contractual obligation to defend may be voidable if the act of defending potentially adverse parties would put the attorney in ethical strain.[178] In *Lirette*, the plaintiff was the captain of a vessel, owned and operated by his employer, who time chartered the vessel to a third party, who chartered it to an oil company.[179] The case involved two contracts among the parties: (1) the charter between the vessel owner and the charterer and (2) the charter between the

---

[177] Moreover, Plaintiff knew or should have known of the pending contractual liability in the Pennsylvania Litigation at the time; therefore, Plaintiff had specific knowledge.

[178] Rec. Doc. 21 at 16 (citing *Lirette v. Popich Bros. Water Transp.*, 699 F.2d 725, 727 n.7 (5th Cir. 1983)).

[179] *Lirette*, 699 F.2d at 726.

charterer and the oil company.[180] The first charter provided that the owner would indemnify and hold the charterer and the oil company harmless from injury claims by the owner's employees.[181] The second charter required the charter to indemnify the oil company against claims for injuries of the oil company's employees or employees of parties other than the charterer resulting from willful or negligent acts of the charter or its agents.[182]

In *Lirette*, the plaintiff first sued the vessel owner, and later made the oil company an additional defendant.[183] The oil company then filed a third-party complaint against the charterer seeking indemnity.[184] The charterer formally tendered its defense of this complaint to the vessel owner.[185] Following the oil company's third-party claim, the charterer and the oil company tendered the defense to the vessel owner whose qualified offer of defense was declined by both the oil company and the charterer.[186]

Although there were two separate contracts in *Lirette*, there is no dispute that at the time of the vessel owner/charterer contract, it was contemplated that the charterer would in turn charter or contract with the oil company, or "broker the vessel" to the oil company for its use.[187] Thus, the oil company called upon both the vessel owner and the charterer to defend the plaintiff's claim

---

[180] *Id.*

[181] *Id.*

[182] *Id.*

[183] *Id.* at 727.

[184] *Id.*

[185] *Id.*

[186] *Id.*

[187] *Id.* at 728.

pursuant to both contracts, and the charterer tendered its defense to the vessel owner pursuant to the first contract.[188] In *Lirette*, the Fifth Circuit reasoned that the relation of the parties, and the confirmed liability of the vessel owner and the charterer to the oil company, "eliminate[d] many of the problems which the vessel owner conjure[d] up."[189] There, the Fifth Circuit held that the indemnity agreement running to the benefit of both the charterer and the oil company was adequate in scope to cover the entirety of the oil company's losses, and was accordingly enforceable.[190]

Moreover, there is no support for Plaintiff's proposition that the court in *Lirette* "observed that a contractual obligation to defend may be voidable if the act of defending potentially adverse parties would put the attorney in ethical strain."[191] To the extent the vessel owner in *Lirette* made such an argument, which is not clear from the opinion, the Fifth Circuit held that many of the problems which the vessel owner conjured up were eliminated by the factual circumstances of the case; and ultimately, the Fifth Circuit determined that the indemnity agreement was enforceable against the vessel owner.

Here, too, any ethical strain conjured up by Plaintiff is eliminated by the factual circumstances of this case. Any conflict of interest created by enforcing the Settlement Agreement as to require Plaintiff to defend and indemnify Hyperion as a third-party defendant to the Pennsylvania Litigation, in which Plaintiff is the plaintiff of record, was created by Plaintiff's own doing. In effect, Plaintiff's counsel could have avoided subjecting himself to "the impossible

---

[188] *Id.*

[189] *Id.*

[190] *Id.*

[191] Rec. Doc. 21 at 16.

stress," of which Plaintiff now warns, by advising his client against signing the Settlement Agreement or raising the issue prior to execution of the Settlement Agreement. Moreover, Plaintiff cannot seek equitable relief based on the violation of public policy, when Plaintiff has unclean hands in seeking to recover in multiple venues and failing to inform the courts about those related cases.[192]

In support of his argument that it would violate public policy to enforce the Settlement Agreement against Plaintiff given his status as a seaman, Plaintiff cites *Parks v. Dowell Division of Dow Chemical Corporation*, where the Fifth Circuit held that the contract was unenforceable as contrary to public policy. However, as discussed *supra*, the circumstances regarding the Settlement Agreement between Plaintiff and Hyperion are factually distinguishable from those in *Parks*.[193] As previously discussed, even applying the heightened standard of scrutiny afforded to contracts involving seamen, the Settlement Agreement in this case is enforceable because, in particular, Plaintiff had advice from legal counsel, Plaintiff stated on the record at the time of execution of the Agreement that he understood his rights in entering the contract, and Plaintiff negotiated for the compensation he received in exchange for entering the Settlement Agreement with advice of counsel.

Plaintiff additionally cites *Cates v. U.S.*, a case in the Fifth Circuit, for the proposition that courts' ultimate concern in these cases is whether, at the time the seaman relinquished those rights, he did so with "an informed understanding of his rights and a full appreciation of the

---

[192] *Henderson v. United States*, 135 S. Ct. 1780, 1783, n.1 (2015) ("The unclean hands doctrine proscribes equitable relief when, but only when, an individual's misconduct has immediate and necessary relation to the equity that he seeks.") (internal citation and quotation marks omitted).

[193] *Parks*, 712 F. 2d. 154 (5th Cir. 1983).

consequences" of executing the release.[194] In *Cates*, the plaintiff, a seaman brought suit against the United States and his employer.[195] On the eve of trial, the plaintiff settled his claim against his employer and executed a release in their behalf and their vessels.[196] After the trial date was reset, the Government argued for the first time that failure to reserve rights against it expressly in the release operated to absolve the United States from liability.[197] Following trial, the district court entered judgment against the United States; the Fifth Circuit affirmed.[198] In affirming the district court, the Fifth Circuit reasoned that (1) a court of admiralty is a court of equity; (2) the common law rule requiring express reservation of rights against one tortfeasor in a written instrument releasing another is an "anachronistic and rigid rule"; and (3) an omnipresent characteristic of modern maritime litigation is its multiparty nature, settlements with some, but not all, parties are frequently made, and adoption of the ancient common law rule would frustrate such partial settlements.[199] Moreover, the Fifth Circuit held that the modern, sensible rule is that "the consequence of the release is to be determined by the intentions of the parties."[200]

In this case, the intention of the parties is reflected in the plain meaning of the defense and indemnification provision, which requires Plaintiff to defend and indemnify Hyperion against "all claims, suits, liabilities and expenses . . . ." As previously stated, the plain meaning of the phrase,

---

[194] Rec. Doc. 21 at 17–18.

[195] *Cates*, 451 F.2d at 412.

[196] *Id.*

[197] *Id.* at 413.

[198] *Id.* at 412.

[199] *Id.* at 414–15.

[200] *Id.* at 415.

"all . . . liabilities" in this provision is that every type of liability is encompassed, including contractual liability. Furthermore, Plaintiff makes no allegation that anything about the circumstances in which the Settlement Agreement was executed indicates that the parties intended the consequence of the defense and indemnification clause to be otherwise, where Plaintiff was advised by legal counsel and freely negotiated the terms of the agreement.[201] Therefore, enforcement of the Settlement Agreement does not violate public policy, and the Court hereby grants summary judgment in favor of Hyperion.

## IV. Conclusion

Since there is no genuine issue of material fact regarding the existence of a valid Settlement Agreement or the defense and indemnification clause contained therein, and only the interpretation of the unambiguous terms contained within that clause are in dispute, which is a matter of law, summary judgment is appropriate.[202] Pursuant to the principles of contract law and admiralty law, as discussed above, the Court finds that the indemnification provision contained within the Settlement Agreement requires Plaintiff to defend and indemnify Hyperion against all claims, including those for contractual liability, arising out of this incident. The Court further finds that enforcement of the Settlement Agreement does not violate public policy for the reasons stated above.

---

[201] Again, if Plaintiff's counsel mistakenly thought that because defendants had different attorneys representing them that defendants would not enforce an agreement entered in the litigation occurring in another state, that does not make the agreement unfair or unconscionable –it just means that Plaintiff and his counsel will reap what they sowed.

[202] *Id.* at 332 (affirming the district court's resolution of whether parties' intended to give the indemnitee a right of indemnification for its contractual liability to a third party pursuant to an indemnification agreement between indemnitor and indemnitee, as a matter of law).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Hyperion Safety Services, L.L.C.'s Motion

for Summary Judgment **IS GRANTED.**

**NEW ORLEANS, LOUISIANA**, this 18th day of July, 2018.


$\qquad\qquad$ _Nannette Jolivette Brown_
$\qquad\qquad$ **NANNETTE JOLIVETTE BROWN**
$\qquad\qquad\qquad$ **CHIEF JUDGE**
$\qquad\qquad$ **UNITED STATES DISTRICT COURT**